**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE GEORGE ANN SOUSA, | : | Bankruptcy No. 05-48815 (KCF) |
|  | : | Adv. Proc. No. 06-2319 (KCF) |
| Debtor. | : |  |
| ————————————— | : |  |
|  | : |  |
| GEORGE ANN SOUSA, | : |  |
|  | : | CIVIL ACTION NO. 07-3514 (MLC) |
| Appellant, | : |  |
|  | : |  |
| v. | : | **MEMORANDUM OPINION** |
|  | : |  |
| OLD REPUBLIC NATIONAL TITLE | : |  |
| INSURANCE COMPANY, et al., | : |  |
|  | : |  |
| Appellees. | : |  |
| ————————————— | : |  |

George Ann Sousa ("Debtor") filed a voluntary bankruptcy petition under chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § ("Section") 101, et seq. ("Bankruptcy Code"), on October 13, 2005. See Bankr. No. 05-48815, dkt. entry no. 1, Pet. On May 8, 2006, the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") entered an order denying confirmation of the Debtor's proposed chapter 13 plan because "her unliquidated claims exceed[ed] the statutory limitation of $307,000". Id., dkt. entry no. 21, 5-8-06 Ord. The following day, the Debtor filed a Notice of Voluntary Conversion to Chapter 7. Id., dkt. entry no. 20, Conversion Not.

Old Republic National Title Insurance Company ("Old Republic") and Stewart Title Guaranty Company ("Stewart", and together with Old Republic, the "Title Companies") commenced an

adversary proceeding against the Debtor seeking a judgment (1)
declaring that the Debtor's debts to the Title Companies are
nondischargeable under Sections 523(a)(2)(A), 523(a)(2)(B),
523(a)(4), and 523(a)(6), and (2) denying the Debtor a discharge
pursuant to Section 727(a)(4).  <u>See</u> Bankr. Adv. Proc. No. 06-
2319, dkt. entry no. 1, Compl.  The Title Companies moved for
summary judgment in their favor on all of their claims in the
adversary proceeding.  <u>Id.</u>, dkt. entry no. 8.  In opposition to
the motion, the Debtor sent a one-page letter to the Bankruptcy
Court stating, <u>inter alia</u>, that she intended to call a witness at
trial who would "exonerate" her.  <u>Id.</u>, dkt. entry no. 10, 4-26-07
Blanchard Letter.  The Debtor also submitted two brief
certifications.  <u>Id.</u>, attached Sousa Cert.; <u>id.</u>, dkt. entry no.
11, Sousa Supplemental Cert.

     The Bankruptcy Court held a hearing on the motion for
summary judgment on May 7, 2007.  <u>See id.</u>, dkt. entry no. 26, 5-
7-07 Hr'g Tr.  Thereafter, the Bankruptcy Court, on May 15, 2007,
entered an Order for Summary Judgment ("5-15-07 Order") (1)
finding that there were no genuine issues of material fact and
the Title Companies were entitled to judgment as a matter of law,
(2) denying the Debtor a "global discharge" pursuant to Section
724(a)(4), and (3) ordering that the Title Companies' requests
for summary judgment on their claims under Sections 523(a)(2)(A),
523(a)(2)(B), and 523(a)(4) were moot in light of the Bankruptcy

2

Court's holding under Section 724(a)(4).  Id., dkt. entry no. 12,
5-15-07 Ord.  The Debtor now appeals from the 5-15-07 Order.  For
the reasons stated herein, the Court will affirm the 5-15-07
Order.[1]

**BACKGROUND**

### I.    Events Preceding the Debtor's Bankruptcy Case

The Superior Court of New Jersey entered a judgment against
the Debtor on December 23, 1997 in In the Matter of the Estate of
George C. Spence, No. J-15300-00, dkt. entry no. L-2863 (N.J.
Super. Ct. Ch. Div. Dec. 23, 1997) ("state court judgment").
(Appellees Br., at 3.)  See Bankr. Adv. Proc. No. 06-2319, dkt.
entry no. 8, Appellees' Stmt. of Mat. Facts, Ex. C, state court
judgment.  Specifically, the state court judgment provides, inter
alia, that:

> judgment is hereby entered against [the Debtor] in
> favor of the Estate of George C. Spence in the amount
> of $104,159.55, by reason of the fact that certain
> gifts allegedly made by the decedent during his
> lifetime through [the Debtor] are void as they were the
> result of undue influence and that certain payments
> made by [the Debtor] from the funds of the decedent
> during his lifetime have not been adequately accounted
> for[.]

Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 8, Appellees' Stmt.

---

[1] The Debtor moved for reconsideration of the 5-15-07 Order.
Id., dkt. entry no. 13, Mot. for Recons.  The Bankruptcy Court
denied that motion after holding a hearing on June 18, 2007.
Id., dkt. entry nos. 17, 27, Mot. for Recons. & 6-18-07 Hr'g Tr.

of Mat. Facts, Ex. C, state court judgment.  The state court

judgment was recorded as a lien on January 27, 2000.  Id.

The Debtor, in connection with a refinancing, executed a

sworn Affidavit of Title on June 24, 2002, stating that she owned

the "property located at 13 River Drive, Township of Dover, NJ

08753" ("Property").  (Appellant Br., Ex. B, 6-24-02 Aff. of

Title.)  The Affidavit of Title provides, inter alia, that:

> We have not allowed any interests (legal rights) to be
> created which affect our ownership or use of this
> property.  No other persons have legal rights in this
> property . . . .  There are no pending lawsuits or
> judgments against us or other legal obligations which
> may be enforced against this property. . . .  All liens
> (legal claims, such as judgments) listed on the
> attached judgment search or lien search are not against
> us, but against others with similar names.

(Id.)  However, a civil judgment search performed on February 7,

2005 indicated that the state court judgment remained outstanding

on the date the Debtor signed the Affidavit of Title.  See Bankr.

Adv. Proc. No. 06-2319, dkt. entry no. 1, Compl., Ex. B, 2-7-05

Judgment Search Results.  The Debtor argues that when she signed

the affidavit she "was told by the attorney doing the real estate

closing, and directly responsible for the preparation of the

Affidavit of Title, to merely sign [it] without regard to any

list of judicial liens."  (Appellant Br., at 1.)

Relying on the Debtor's representations in the sworn

Affidavit of Title, Stewart issued a title policy with respect to

the Property.  (Appellees Br., at 4.)  The Property was later

sold at a sheriff's sale to certain third parties.  (Id.)  The
third parties then obtained a title policy with respect to the
Property from Old Republic.  (Id.)

The Superior Court of New Jersey, on August 20, 2004,
entered a judgment in Spence v. Sousa, No. MID-L-7499-99 (N.J.
Super. Ct. Law Div. Aug. 20, 2004) ("second state court
judgment").  See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 8,
Appellees' Stmt. of Mat. Facts, Ex. G, second state court
judgment.  In the second state court judgment, the Superior
Court, inter alia, (1) amended the state court judgment
"retroactively to the date of its entry, December 23, 1997, to
the amount of $98,159.44 to account for various other credits
with post judgment interest accruing from the date of the entry
of the judgment", (2) entered judgment in favor of the Estate of
George C. Spence and against the Debtor in the amount of
$144,481.68 with prejudgment interest accruing from the date of
the complaint, and (3) directed the Estate of George C. Spence to
give the Debtor a $90,000 credit because the estate "settled an
action of legal malpractice against its former attorney".  Id. at
¶¶ 1-2.  Thereafter, the executrix of the Estate of George C.
Spence sold the Property to satisfy the outstanding judgments
against the Debtor.  (Appellees Br., at 4.)  As a result, the
Title Companies "were forced to pay" the executrix, and were
assigned the state court judgment.  (Id. at 5.)  See Bankr. Adv.

Proc. No. 06-2319, dkt. entry no. 1, Compl., Ex. C, Assignment of
Judgment.  The Assignment of Judgment generally provides that (1)
"for value received" the Estate of George C. Spence and its
executrix assign to the Title Companies the state court judgment,
as amended retroactively in the second state court judgment, and
(2) "there is now due and owing . . . on said judgment as amended
the said sum of $142,501.94, with interest and costs from the
date of entry".  Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 1,
Compl., Ex. C, Assignment of Judgment.

## II.  The Debtor's Alleged Misconduct During Her Bankruptcy Case

The Debtor did not initially list the Title Companies as
creditors on her bankruptcy schedules.  See Bankr. No. 05-48815,
dkt. entry no. 1, Pet., Schedules D-F.  She also failed to list
the judgment in favor of the Estate of George C. Spence in the
original amount of $144,481.68, which was entered against her in
the second state court judgment.  Id.  (Appellees Br., at 7.)
The Debtor did, however, amend Schedule F on January 18, 2006 to
add Old Republic as a creditor holding an unsecured claim, but
she listed its claim amount as only $1.  See Bankr. No. 05-48815,
dkt. entry no. 10, Amend. to Schedule F.  The Title Companies
examined the Debtor pursuant to Federal Rule of Bankruptcy
Procedure ("Bankruptcy Rule") 2004 on April 20, 2006.  (Appellees
Br., at 6.)  During the examination, the Debtor testified that
she was "not sure" why Schedule F was amended to add Old

Republic, and did not know why $1 was listed as the amount owing

to Old Republic.  See Bankr. Adv. Proc. No. 06-2319, dkt. entry

no. 8, Appellees' Stmt. of Mat. Facts, Ex. J, Excerpt from 4-20-

06 Sousa Dep., at 41-42.

The Title Companies assert that other misstatements and

omissions made by the Debtor came to light during the course of

the bankruptcy proceedings.  First, on Schedule I, the Debtor

listed her current monthly gross income, wages, and commissions

as $2,400 per month ($28,800 per year).  See Bankr. No. 05-48815,

dkt. entry no. 1, Pet., Schedule I.  However, during her

Bankruptcy Rule 2004 examination, the Debtor testified that she

earned only $22,000 per year, and she later provided a pay stub

indicating that she earned $1,888.34 per month ($23,833.42 per

year).  See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 15,

Appellees' Opp. to the Debtor's Mot. for Recons., Ex. A, Excerpt

from 4-20-06 Sousa Dep., at 8; Id., Ex. B, Debtor's Pay Stub.

(Appellees Br., at 7-8.)  Similarly, on Schedule J, the Debtor

listed her monthly living expenses but "did not disclose any

maintenance expenses for the Debtor's eleven (11) year old

vehicle with 188,000 miles, or any tolls, insurance, gas, parking

or other expenses for the vehicle; or clothing expenses."

(Appellees Br., at 8)  See Bankr. No. 05-48815, dkt. entry no. 1,

Pet., Schedule J.  The Debtor only included $200 per month for

"Transportation (not including car payments)" and $110 per month

7

for auto insurance.  See Bankr. No. 05-48815, dkt. entry no. 1,
Pet., Schedule J.  During her Bankruptcy Rule 2004 examination,
however, she testified that (1) her "car needs a lot of help",
(2) she pays $2 in tolls to travel to and from work and $5 per
month for parking, (3) she was not sure what the $200 for
transportation costs that she listed on Schedule J included, and
(4) she estimates that she will spend approximately $100 to $150
per month on clothing and related expenses.  See Bankr. Adv.
Proc. No. 06-2319, dkt. entry no. 15, Appellees' Opp. to the
Debtor's Mot. for Recons., Ex. A, Excerpt from 4-20-06 Sousa
Dep., at 22-26.

The Title Companies also point out that an attorney who was
present at the Debtor's first meeting of creditors held pursuant
to Section 341(a), certified that the Debtor stated at the
Section 341(a) meeting "that everybody knew about the judgment
entered against her by the Estate of George Spence when she
executed the Affidavit of Title because it was on the judgment
search."  Id., dkt. entry no. 8, McDermott Aff., at ¶ 5.

## III. The Bankruptcy Court's May 7, 2007 Rulings

The Bankruptcy Court, at the conclusion of the hearing on
May 7, 2007, determined that summary judgment in favor of the
Title Companies was appropriate with respect to their claim that
the Debtor should be denied a discharge pursuant to Section
727(a)(4)(A) (count 5).  Id., dkt. entry no. 26, 5-7-07 Hr'g Tr.,

at 17-18.   The Bankruptcy Court acknowledged that the Debtor
attempted to raise a genuine factual issue by asserting that, at
trial, her former attorney would testify that she was not shown
the state court judgment at the time she executed the Affidavit
of Title.  Id. at 13.  The court noted that the Debtor's counsel
made "no attempt to relate the proposed testimony to any of the
elements of the five causes of action asserted in the complaint",
but stated that it would view the evidence in the light most
favorable to the Debtor and assume that the proposed testimony
would negate the element of intent.  Id.  Thus, the court
determined that the proposed testimony "could be relevant" to the
Title Companies' Section 523(a)(6) (count 4) and Section
727(a)(4) (count 5) claims.  Id.

The Bankruptcy Court acknowledged that in addition to
arguing that the Debtor made a false statement by signing the
Affidavit of Title, the Title Companies assert that the Debtor
made false statements when she (1) failed to list them as
creditors on her bankruptcy schedules, and (2) amended Schedule F
to include Old Republic but listed $1 as the amount it is owed.
Id. at 14.  The court stated, "there is no way the testimony of
the attorney who did the Debtor's refinance is relevant to a
false statement made in connection with her bankruptcy proceeding
filed three years later."  Id.  The court also stated that it
"still has no direct evidence from the Debtor, maybe hearsay, on

9

the issue of her intent with regard to failing to list the title
companies accurately in her schedules." Id.  The Bankruptcy
Court then determined that although the Debtor's failure to
initially list the Title Companies as creditors "may or may not
have been material", her later listing the amount she owed to Old
Republic as $1 "certainly was" material.  Id. at 17.  The court
explained that if she had listed the actual amount she owed to
Old Republic on her schedules, she would have been over the
unsecured debt limit, and thus, ineligible to file her bankruptcy
petition under chapter 13.  Id.  Thus, the Bankruptcy Court
concluded that there was sufficient circumstantial evidence of
intent to deceive.  Id.  Therefore, the court stated that it
intended to grant summary judgment in favor of the Title
Companies on their Section 724(a)(4)(A) claim (count 5), and
consider the remaining counts of the adversary complaint moot.
Id.

## DISCUSSION

### I.   Jurisdiction and Standard of Review

A district court has appellate jurisdiction over a
bankruptcy court's final judgments, orders, and decrees.  28
U.S.C. § 158(a).  A district court reviews a bankruptcy court's
"legal determination de novo, its factual findings for clear
error[,] and its exercise of discretion for an abuse thereof."
In re Rashid, 210 F.3d 201, 205 (3d Cir. 2000); see Fed.R.Bankr.P.

8013 ("On appeal the district court . . . may affirm, modify, or
reverse a bankruptcy judge's judgment, order, or decree or remand
with instructions for further proceedings.  Findings of fact,
whether based on oral or documentary evidence, shall not be set
aside unless clearly erroneous.")  Also, the Court, when
addressing mixed questions of law and fact, divides the questions
into their respective components and applies the appropriate
standard to each.  In re Brown, 951 F.2d 564, 567 (3d Cir. 1991).

## II.  Legal Standards[2]

### A.    Summary Judgment Standard

Bankruptcy Rule 7056 states that Federal Rule of Civil
Procedure ("Rule") 56 applies in bankruptcy adversary
proceedings.  Fed.R.Bankr.P. 7056.  Rule 56 states that summary
judgment is proper "if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that the movant
is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).
The movant bears the initial burden of showing that there is no
genuine issue of material fact.  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  Once the movant has met this prima facie
burden, the non-movant must "set out specific facts showing a

---

[2] The Debtor's bankruptcy case was commenced prior to the
effective date of the Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005.  See 109 P.L. 8, 119 Stat. 23 (2005).
Section 727(a)(4)(A), which is discussed at length in this Legal
Standards section, was not amended in that Act.

genuine issue for trial." Fed.R.Civ.P. 56(e)(2).  A non-movant
must present actual evidence that raises a genuine issue of
material fact and may not rely on mere allegations.  <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable
to the non-movant when deciding a summary judgment motion.
<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
587 (1986).  At the summary judgment stage, the Court's role is
"not . . . to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial." <u>Anderson</u>, 477 U.S. at 249.  Under this standard, the
"mere existence of a scintilla of evidence in support of the
[non-movant's] position will be insufficient [to defeat a Rule
56(c) motion]; there must be evidence on which the jury could
reasonably find for the [non-movant]." <u>Id.</u> at 252.  "By its very
terms, this standard provides that the mere existence of <u>some</u>
alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the
requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."
<u>Id.</u> at 247-48 (emphasis in original).  A fact is material only if
it might affect the action's outcome under governing law.  <u>Id.</u> at
248.  "[T]here is no issue for trial unless there is sufficient
evidence favoring the nonmoving party for a jury to return a
verdict for that party.  If the evidence is merely colorable, or

12

is not significantly probative, summary judgment may be granted."
Id. at 249-50 (internal citations omitted).

###    B.    Section 727(a)(4)(A)

The purpose of the Bankruptcy Code is "to relieve debtors
from the weight of oppressive indebtedness and provide them with
a fresh start." Ins. Co. of N. Am. v. Cohn (In re Cohn), 54 F.3d
1108, 1113 (3d Cir. 1995). Section 727 provides that (1) the
bankruptcy court must grant the debtor a discharge, and (2) such
a discharge "discharges the debtor from[, inter alia,] all debts
that arose before the date of the order for relief". See 11
U.S.C. § 727(a)-(b). However, the Bankruptcy Code provides
exceptions to discharge in certain circumstances involving debtor
malfeasance. JP Morgan Chase Bank v. Tamis, No. 05-737, 2005
U.S. Dist. LEXIS 28120, at *11-*12 (D.N.J. Nov. 16, 2005). The
Bankruptcy Code provisions providing exceptions to discharge are
strictly construed against creditors and in favor of the debtor.
Id. at *12; In re Cohn, 54 F.3d at 1113. A party objecting to
discharge under Section 727(a)(4)(A), for example, bears the
burden of proving that the debtor is not entitled to a discharge
by a preponderance of the evidence. Georges v. Georges (In re
Georges), 138 Fed.Appx. 471, 472 (3d Cir. 2005); see Grogan v.
Garner, 498 U.S. 279, 286-87 (1991) (determining that
preponderance of the evidence is the appropriate burden of proof

governing the applicability of the Bankruptcy Code's
nondischargeability provisions).

The Bankruptcy Court relied on Section 727(a)(4)(A) in
reaching its determination that the Debtor was not entitled to a
discharge.  Section 727(a)(4)(A) requires the Bankruptcy Court to
grant a debtor a discharge unless such debtor "knowingly and
fraudulently, in or in connection with the case - (A) made a
false oath or account".  11 U.S.C. § 727(a)(4)(A).  This
provision:

> imposes affirmative duties upon a debtor to disclose
> the existence of all assets and his ownership interest
> in property and to answer all questions fully and
> honestly for the benefit of his or [her] creditors and
> other parties with an interest in . . . the debtor's
> bankruptcy case who are entitled to a "truthful
> statement of the debtor's financial condition."

Scimeca v. Umanoff, 169 B.R. 536, 542 (D.N.J. 1993) (alterations
and omissions in original) (citations omitted), aff'd, 30 F.3d
1488 (3d Cir. 1994) (table decision); Smith v. Faiella (In re
Faiella), Adv. Proc. No. 06-1547, 2007 Bankr. LEXIS 2042, at *24-
*25 (Bankr. D.N.J. June 13, 2007) (citations omitted).
Thus, to establish an objection to discharge under Section
727(a)(4)(A), a plaintiff must show that (1) the debtor knowingly
and fraudulently made a false oath, and (2) such oath related to

14

a material fact.  Scimeca, 169 B.R. at 542; In re Faiella, 2007
Bankr. LEXIS 2042, at *25.[3]

     "Whether a debtor has made a false oath within the meaning
of [Section] 727(a)(4)(A) is a question of fact." Scimeca, 169
B.R. at 543.  A false statement or an omission on the debtor's
schedules or Statement of Financial Affairs, or made during an
examination conducted in connection with the bankruptcy
proceedings may support denial of discharge pursuant to Section
727(a)(4)(A).  See id. at 542; In re Faiella, 2007 Bankr. LEXIS
2042, at *25.  However, advice of counsel may excuse an
inaccurate or false oath.  In re Georges, 138 Fed.Appx. at 472.
In addition to showing that the debtor made a false statement of
omission, the objecting party must also show that the debtor
actually intended to hinder, delay, or defraud creditors.  Id.
"The requisite degree of fraudulent intent is shown if the debtor
'engaged in behavior which displayed a reckless and cavalier
disregard for the truth.'" Isaacson v. Castiglione (In re
Castiglione), Adv. Proc. No. 06-1932, 2007 Bankr. LEXIS 1316, at
*10 (Bankr. D.N.J. Jan. 30, 2007) (citations omitted).

_____

     [3] The Faiella bankruptcy court acknowledged that in Scimeca,
the district court required the party objecting to discharge to
establish the elements of its Section 727(a)(4) claim by clear
and convincing evidence.  2007 Bankr. LEXIS 2042, at *24.
Nevertheless, the Faiella court applied the preponderance of the
evidence standard of proof to the plaintiff's Section 727(a)(4)
claim.  Id. at *23-*24.  This Court will follow the majority of
courts and apply the clear and convincing standard set forth in
Scimeca.

If the objecting party establishes that the debtor
intentionally made a false statement or omission, the bankruptcy
court must determine whether such statement or omission was
material to the course of the bankruptcy case.  Scimeca, 169 B.R.
at 543.  A false oath is material "if it bears a relationship to
the bankrupt's business transactions or estate, or concerns the
discovery of assets, business dealings, or the existence and
disposition of . . . property."  Id.  A false oath may be
considered material even if it did not result in any detriment to
a creditor or the debtor.  Id.

## III. Legal Standards Applied Here

The Debtor argues that the attorney representing her in
connection with her real estate refinancing in 2002 told her to
sign the Affidavit of Title, but did not give her any list of
judicial liens to review.  (Appellant Br., at 3.)  She also
argues that she relied entirely on the attorney and did not know
what she was signing.  (Id.)  Thus, she asserts that the
Bankruptcy Court "erred in its ruling against the Debtor on the
summary judgment motion by either ignoring this critical fact or
not giving the Debtor's explanation of the circumstances its
proper and critical weight."  (Id.)  Moreover, the Debtor
contends that summary judgment was improper because (1) the Title
Companies have not offered any evidence rebutting her certified
statement that she was not permitted to review a list of judicial

liens at the time she executed the Affidavit of Title, and (2)
the Bankruptcy Court "committed clear error" by failing to view
the evidence in the light most favorable to her and accepting her
certified statement that she was not shown a list of judicial
liens as true.  (Id. at 5-6.)  The Court finds, however, that the
Bankruptcy Court based its holding on the applicable law and the
entire record before it, and thus, did not err in granting
summary judgment in favor of the Title Companies.

The Debtor incorrectly asserts that the "factual basis which
gave rise to the Bankruptcy Court's granting summary judgment
Order to the [Title Companies] was based on the execution of an
Affidavit of Title by the Debtor at the time of a refinancing."
(Id. at 2.)  The Bankruptcy Court acknowledged that, at trial,
the Debtor intended to present testimony from her former attorney
indicating that she was not shown a list of judicial liens or the
state court judgment at the time she executed the Affidavit of
Title.  See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 26, 5-
5-07 Hr'g Tr., at 13.  However, the Bankruptcy Court correctly
noted that in addition to asserting that the Debtor made a false
oath by signing the Affidavit of Title, the Title Companies also
assert that the Debtor made false statements when she failed to
list them as creditors on her schedules and later amended
Schedule F to state that she owed Old Republic only $1.  Thus,
the Bankruptcy Court did view the evidence in the light most

17

favorable to the Debtor and assumed that the proposed testimony
of her former attorney would demonstrate that she did not intend
to deceive the Title Companies when she signed the Affidavit of
Title, which contained a false representation.  See id. at 13.
Nevertheless, the Bankruptcy Court concluded that the attorney's
proposed testimony has no relevance to the false statements the
Debtor made on her bankruptcy schedules.  See id.

The Debtor executed a declaration pertaining to her
schedules that states, "I declare under penalty of perjury that I
have read the foregoing summary of schedules, consisting of 12
sheets, and that they are true and correct to the best of my
knowledge, information, and belief."  Bankr. No. 05-48815, dkt.
entry no. 1, Decl. Concerning Debtor's Scheds.  Further, the
Debtor certified under penalty of perjury that her amendment to
Schedule F to include Old Republic as an unsecured creditor with
an outstanding claim against the Debtor in the amount of $1, was
true and correct.   Id., dkt. entry no. 10, Amend. to Sched. F.
Thus, the statements the Debtor made in both her original
schedules and amended Schedule F may constitute false oaths under
Section 727(a)(4)(A) because they were made under oath.  See The
Cadle Co. v. Zofko, No. 06-170, 2007 U.S. Dist. LEXIS 95162, at
*16 (W.D. Pa. Jan. 23, 2007).

The Bankruptcy Court determined that "[t]he Debtor's failure
to report known information on the schedules is prima facie

18

evidence of a false oath".  Bankr. Adv. Proc. No. 06-2319, dkt.
entry no. 26, 5-5-07 Hr'g Tr., at 15.  See Scimeca, 169 B.R. at
543 (stating that whether a debtor has made a false oath is a
question of fact).  The Court finds that such a determination was
supported by the record before the Bankruptcy Court.
Specifically, the Debtor (1) did not initially list the Title
Companies as creditors on her bankruptcy schedules when they
were, in fact, creditors on the date she filed her petition, (2)
did not list the additional amount she owes to the Estate of
George C. Spence pursuant to the second state court judgment in
her schedules, and (3) amended Schedule F to include Old Republic
as a creditor, but listed the debt she owed to it as $1 when its
"claim far exceeds $1.00 as evidenced by the [state court
judgment] of over $142,000." (See Appellees Br., at 7.)  Thus,
the Bankruptcy Court's determination that the Debtor made a false
oath within the meaning of Section 727(a)(4)(A) was adequately
supported by the evidence and was not clearly erroneous.

The Court also agrees with the Bankruptcy Court that the
Debtor made a false oath on her schedules with reckless disregard
for the truth.  See In re Castiglione, 2007 Bankr. LEXIS 1316, at
*10.  When asked during her Bankruptcy Rule 2004 examination
whether the Title Companies were listed on her original schedules
as creditors, the Debtor responded, "I don't know.  I don't know
who [Old Republic or Stewart] is." Bankr. Adv. Proc. No. 06-

19

2319, dkt. entry no. 8, Appellees Stmt. Of Mat. Facts, Ex. J,
Excerpt from 4-20-06 Sousa Dep., at 41.  Similarly, when asked
why she amended her schedules to include Old Republic, the Debtor
replied, "I'm not sure.  I am going to have to defer to my
attorney."  Id. at 42.  She also explained that she did not know
why she listed Old Republic's claim as only $1.  Id.

    "[A] debtor cannot, merely by playing ostrich and burying
his [or her] head deeply enough in the sand, disclaim all
responsibility for statements which he has made under oath."
Scimeca, 169 B.R. at 543 (alterations in original) (noting that
discharges have been denied to debtors who claimed they did not
read their schedules before they signed them, and thus, did not
know they were making a false oath).  Accordingly, the Debtor's
extreme carelessness with respect to the information contained in
her schedules sufficiently demonstrates fraudulent intent.  See
id. ("[E]xtreme carelessness of the debtor in filling out the
Petition will not excuse a false oath.").  Moreover, the Court
agrees with the Bankruptcy Court that other circumstantial
evidence, including the fact that the Debtor would have been
ineligible to file a chapter 13 bankruptcy petition had she
listed the Title Companies and the correct amount she owes to
them on her schedules, supports a finding that the Debtor
intended to deceive her creditors.  See id. at 542-43.  Bankr.
Adv. Proc. No. 06-2319, dkt. entry no. 26, 5-5-07 Hr'g Tr., at

17.  It also suggests that the Debtor's "false oaths" were
material because they bore a direct relationship to the Debtor's
bankruptcy estate and her overall ability to invoke the
protections of the Bankruptcy Code.  See Scimeca, 169 B.R. at
543.  Therefore, we find that the Bankruptcy Court did not err in
granting summary judgment in favor of the Title Companies with
respect to their Section 727(a)(4)(A) claim.[4]

The Court notes that the Debtor, in opposing the Title
Companies' motion for summary judgment in the Bankruptcy Court,
did not address or offer any evidence to rebut the Title
Companies' argument that she should be denied a discharge based
on false oaths she made on her bankruptcy schedules.  Instead,
she (1) sent a one-page letter to the Bankruptcy Court stating,
inter alia, that she intended to call a witness at trial who
would testify that she was not shown any document listing the
state court judgment at the time she executed the Affidavit of
Title, and (2) submitted two brief certifications stating, inter
alia, that she was not shown any documents listing the state
court judgment at the closing of the real estate refinancing.

_____

[4] After denying the Debtor a discharge under Section
727(a)(4) (count 5), the Bankruptcy Court determined that the
Title Companies' remaining claims against the Debtor were moot.
See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 26, 5-5-07 Hr'g
Tr., at 17-18.  Accordingly, the Debtor only addressed the Title
Companies' Section 727(a)(4) claim in this appeal.  Because we
are affirming the Bankruptcy Court's decision, it is not
necessary for the Court to address any of the Title Companies'
other nondischargeability claims.

See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 10, 4-26-07
Blanchard Letter and attached Sousa Cert.; id., dkt. entry no.
11, Supplemental Sousa Cert.  These documents make no mention of
the Title Companies' allegations concerning the Debtor's
misstatements and omissions on her schedules.

"[T]he burden is on the [non-movant], not the [C]ourt, to
cull the record and affirmatively identify genuine, material
factual issues sufficient to defeat a motion for summary
judgment."  Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS
1876, at *25-*26 (E.D. Pa. Mar. 1, 1989).  Thus, the Court
concludes that the Debtor has failed, by definition, to bring to
this Court's attention any evidence that could conceivably raise
any genuine issue of material fact with respect to the Title
Companies's claim that the Debtor made false oaths in her
schedules and should be denied a discharge pursuant to Section
727(a)(4)(A).  Therefore, the Court holds that the Bankruptcy
Court's grant of summary judgment in favor of the Title Companies
was "appropriate" in this case.  See Anchorage Assocs. v. V.I.
Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990) (noting that a
movant is not automatically entitled to summary judgment simply
because the non-movant fails to oppose the motion, and stating
that an unopposed motion should only be granted "if
appropriate").

**CONCLUSION**

The Court, for the reasons stated supra, concludes that the Debtor has failed to demonstrate that the Bankruptcy Court erred in granting summary judgment in favor of the Title Companies on their Section 727(a)(4) claim (count 5).  The Court will issue an appropriate order.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: January 30, 2008